192284 We-LAN Inc. v. Iancu. Mr. Wilson, whenever you're ready. Thank you, Your Honor. May it please the Court. There are two primary issues in this appeal. The first issue is claim construction, and the second issue is whether substantial evidence supports the Board's obviousness determination. Either of these issues will require reversal of the Board's entire obviousness determination for all claims, but I'm going to start with claim construction. The Board refused to adopt appellant's construction of non-contention reserved access identifier. I want to start first by pointing out that everyone agreed before the Board, and no one disputes it before this Court, that a non-contention reserved access identifier is a pre-allocated code as discussed in the 320 patent. The second point I want to make is that in the 320 patent, the 320 patent uniformly distinguishes between pre-allocated codes and randomly selected codes. One way to think about that is if you were in a concert theater and you had a set of general admission seats and a set of reserved seats. The general admission seats are open, and whoever comes in with a general admission ticket can randomly select a seat. In the reserved section, seats are pre-assigned or pre-allocated to specific people. And so when I look at a reserved seat, I can see someone who is, I can see the seat, I can see that it's occupied, and I know who occupies it because I have pre-allocated that seat to a specific person. Now, the Board rejects... Excuse me. This is Judge Stoll. I have a question for you. Taking your analogy a little further, would you agree that what the Board held essentially is that pre-allocated could be slightly different? That is, that there could be pre-allocated seats that are maybe in the front section around the stage. They're still not individually pre-allocated. They're not pre-allocated to individuals, but they're pre-allocated to anybody who may be paid extra to sit right in front of the stage, but it's still first come, first serve, randomly assigned. On the other hand, there are seats that are in a section further back that are not pre-allocated that way. Would that be a fair reading of what the Board said? It didn't have to be pre-allocated in the sense of being pre-assigned to individual mobile stations, but rather pre-allocated in the sense of used for a particular purpose. So, I think what your Honor is addressing is the Board's characterization of Stoll's codes as being sort of reserved for handover or reserved for initial ranging, as the Board put it. To that extent, I think your Honor is correct. That's, of course, not what the 320 patent is disclosing. The 320 patent uniformly teaches that pre-allocated codes are assigned to a specific mobile station. Therefore, when I receive a pre-allocated code as a base station, when I look at someone, a seat in the reserved section, I know who's sitting in that seat. By contrast, if I look at the general admissions... What do you think... I just wanted to ask you. I understand your position. What do you think is the best... What do you think is the claim language that supports your more narrow interpretation of the claims over the Board's broader interpretation? I believe that the claim language is non-contention, reserved, access, identifier. And I believe that that claim language was chosen because it captures each aspect of pre-allocated codes as they're described in the specification. That was an attempt to capture those things. Is there a particular word there? Is it reserved? Identifier? Which word? I mean, or do you think it's all of them? I think it's all of them together. The idea of non-contention, people are not contending for these seats. The idea that they are reserved, they're set aside, not available for random selection. And they're access identifiers. They identify a mobile device to a base station. That's what those words were meant to capture. And I believe that's what they do capture, especially read in view of the specification. The Board rejected that interpretation. Counsel, this is Judge Wallach. On page 30 of the Green Brief, the PTO asserts that regarding Wyland's argument that the specification describes pre-allocated codes and randomly selected codes as mutually exclusive alternatives based on the use of OR as well as language was never raised before the PTAB and is waived. Where do you raise that argument before the PTAB? So, Your Honor, we address that in our... You referred to the Gray Brief, I think. But we addressed that issue, and I will point you to specifically where we point this out. Now, remember, I'm not asking you about the Gray Brief. I'm asking about the Green Brief and where in the record. Right, right. So, the passage that we pointed the court to, and I'm actually referencing the Gray Brief at page 10, but it cites to the appendix, page 325. And it also cites some expert testimony at appendix page 325. I'll take a look. I can go there and specifically reference it if Your Honor would like, but that's where it is. We use the exact same example, and we said the specification distinguishes so-called open codes from the claims reserved or pre-allocated codes. And we cite the exact same passage of the specification in column 15 that we're relying on there. Okay. So, Your Honor, and as an additional point, unless we were raising an entirely new claim construction position, the Federal Circuit case law is that you haven't waived the claim construction argument anyway. So, I think that argument is without merit. But pushing on, the board's, the linchpin of the board's claim construction analysis was column 14, where it concluded that it thought it found an embodiment in which the There are two problems with the board's analysis there. First, the petitioner conceded, both parties agreed at the oral hearing, that the 320 patent contains no such disclosure of randomly selecting a pre-allocated code. So, the board departed from the party's agreement and went its own way with its construction and its interpretation of column 14, which is improper. That's just legally improper. The board is not permitted to go its own way on invalidity. The second problem with the board's interpretation of column 14 is it's just wrong. Column 14 is describing a situation in which the mobile station has a set of pre-allocated codes that it has run through, but none of them apply to its situation. Think of it like I've got a reserved seat in the pit in front of the orchestra, but I want to sit in the balcony, and I don't have a reserved seat in the balcony. So, I've got to go get a general admission ticket and randomly pick a seat up in the balcony if I want to sit in the balcony. That's what's being described in column 14. You don't have a pre-allocated code that fits your situation, so you have to go back to like everybody else. Counsel? Mr. Stoltz, is this where you're pointing out that the board erred in its opinion at page 13 where it inserted the bracket pre-allocated before the word code in column 14 of the patent? That's correct, Your Honor. And that went to the board's argument that your construction would exclude a preferred embodiment? That's correct, Your Honor. In fact, they relied on it over and over and over again in their final written decision to reject our argument. Well, that may be sort of correct, but as I think is pointed out in green in the patent there was an alternative conclusion, right, to support its claim construction decision and that was its reliance on this permissive language in the specification. So, even if we don't rest on the board's argument that you've cited with regard to column 14, there's still, I hate to call it an alternative basis, but the board, there's still an analysis with regard to the specification in the permissive language that led the board to conclude as it did in the claim construction. So, isn't that sufficient to affirm without getting involved in your column 14 debate? It would be if it were true, Your Honor. The problem is it's not true. What's not true? It is not true that the specification uses permissive language with respect to whether or not pre-allocated codes can be randomly selected. We cited numerous examples in the board that show a clear distinction between the two. There are numerous other examples, but the point is the director, neither the director nor the board pointed to a specific example. The most contentious example, the best example that the board can muster is the bottom of column 12 where it says the reserved codes are not to be randomly selected. And the board says, the board crossed that quote in its opinion and said, well, but look at this can presume earlier in the passage. What that passage is actually describing is a situation in which we're telling mobile stations which section is the general admission section and which section is the reserved section. And what it says is all we have to do is tell a mobile station, here's the general admission section. Here's what you can randomly select from. And you can assume that whatever's not in this section is pre-allocated. It's reserved. And so pre-allocated codes are not to be randomly selected. You don't go randomly choosing a seat in the reserved section. That's what that passage says. The alternative is we can explicitly tell the mobile station, here's the general admission section. Here's the randomly selected section. And here's the reserved section. It's reserved. Don't go randomly selecting in there. So the only permissiveness there is either we let you assume which section you're not supposed to be randomly selecting in or we can explicitly tell you what's reserved for pre-allocation. That is not permissive with respect to randomly selecting a pre-allocated code. And I'll reserve the rest of my time if there are no further questions. Well, actually, I have a further... This is Judge Wallach. Okay. Sure, Your Honor. I'm looking at Appendix 325, and I don't see the answer to my question about mutually exclusive alternatives based on the use of or as well as... Where was that argument raised? So, Your Honor, I'm looking at 325, and we say... We say the specification distinguishes so-called open codes from the claimed reserved or pre-allocated codes. In contrast to the claimed codes, the specification explains that an open code refers to a code that will not be assigned to any particular subscriber station but can be randomly selected by subscriber stations for use in a random access channel message. So what it's saying there in that passage with citation to the exact same passage, actually two of the same passages that we rely on, Column 7 and Column 15, it's saying the patent is drawing a clear distinction between pre-allocated codes and randomly selected codes. And that's the same argument we're making now. Well, thanks. Thank you, Your Honor. And again, even if it were not the same argument, we haven't changed our claim construction position, and therefore, it's not waived. Thank you, Your Honors. I'll reserve the rest of my time. Okay. We reserve the remainder of your time for rebuttal, and let's hear from Mr. Rosillo. Thank you, Your Honor. The broad claim language and permissive disclosure of the 320 patent do not support Weiland's position here. And I think we agree with Your Honor, Judge Prost, that you could affirm the Board's claim construction on one of two alternatives, the first being that it's improper to import a negative limitation into the claim language, and that negative limitation here is whether or not the reserved code is randomly selected by the mobile station. And we pointed out in, I think, great detail in the green brief all of the language throughout the specification. I think we did that in the footnotes 13 through 15, including those broad permissive statements in the code pre-allocation and subscriber station sections of the code that would prevent this Court and the Board from importing such a negative limitation into the claims because there's no clear disavowal. There's no clear definition there. I think moving to column 12, I think that's what Counsel for Weiland discussed a little bit, and they the claim language requires the importation of the nonrandom selection by the mobile station into the claim. And I think when you look at the actual language, it supports the Board here because in that language, it says that the code assignment module can presume that those codes absent from the usage type map represent codes reserved for pre-allocation. And then here's where the kind of the fight is, is what does that next phrase mean? And it says, and that the reserved codes are not to be randomly selected. And I think the Board was correct here, and I think even the District Court, when they looked at this in the companion case, found that that language, that can presume language from the first part of that sentence, needs to be can presume both that the usage type map represent codes reserved for pre-allocation and can presume that the reserved codes are not to be randomly selected. This is not a definition. This is not something that rises to the level to allow the court or the Board to import that limitation into the claim language. And I think Your Honor was correct in recognizing that this is one of two different grounds that the Board relied upon in support of its claim construction. The second one is that it would be improper to import, or sorry, improper to exclude the preferred embodiment that was set out in column 14. And to, I guess, extend the analogy that counsel for Weiland provided in his opening argument, what the Board looking at column 14 recognized that there would be a user or there would be a contract goer who would have four reserved seats, but they were not told how, which one of those four seats they had to sit in. And so they could randomly select among that group of four seats that's been reserved for them and decide where they could sit in each one of those four seats. And that's what the Board said that the language at the bottom of column 14 really means. And that one of ordinary school in New York looking at that would read the that has a set of codes that are stored in its memory that have the proper usage type, but do not have the specific semantic or something without a semantic attached to it, then it would be able to randomly select among those codes because those codes are available codes of the desired usage type. And that's what the language in column 14 teaches how you select those codes. And so I think on either one of those theories, this court can affirm the Board's claim construction. And then addressing... Oh, I'm sorry. No, go ahead. I just said anything further. So you're about to do that. And I think looking at the Appendix 325 where Judge Wallach was asking counsel for the citation for where they argued that the language was mutually exclusive, again, that language is not there. We believe that they waived that argument. And we agree with Judge Wallach that that passage does not show that they have preserved that argument, that construction argument. Counsel, this is Judge Wallach. You can't agree with me. I didn't say that. I just said, well, thank you. Well, my apologies, Your Honor. We agree that the court should look to that disclosure. And I believe that the court, in looking at that, would recognize that they did not preserve that claim construction argument. Anything further? And with respect to the second issue that they referred to, I'm sorry, that counsel for Weiland referred to in the opening statement, we believe that substantial evidence does exist to support the board's finding that Song teaches the non-contention reserved access identifier. And we would submit those arguments on the papers. Thank you. If there are no further questions, I yield my time. Thank you. Mr. Wilson, you have a few minutes remaining. Thank you, Your Honor. Just very quickly, column 14 does not describe the scenario that counsel just articulated, where there are four pre-allocated seats in which the attendee wants to sit. What it describes is a situation where there are four seats, or potentially four seats, where the attendee wants to sit. But where the attendee does not want to sit, the attendee wants to sit somewhere else where it doesn't have a seat. So it has to go out and randomly select. That is very clearly articulated in our briefs. But to the point about the permissiveness of the specification, at the top of column 3, lines 1 through 5, the specification says, the use of pre-allocated codes avoids the collision probability associated with random subscribed or selected access codes. That's not permissive in any way. There's nothing permissive about it. Column 7, lines 19 through 24, describes two different types of codes. A distinct second portion of codes as open codes, where an open code refers to a code that can be randomly selected. That's not permissive. Finish your thought. So there is passage after passage in the 320 specification that describes a clear delineation between pre-allocated codes and randomly selected codes. They do not point to any ambiguity, any permissiveness in any of those passages. Thank you. We thank both sides and the case is submitted.